IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DANIEL MILLER, | : | |
| Plaintiff | : | No. 1:25-cv-00759 |
| | : | |
| v. | : | (Judge Kane) |
| | : | |
| YORK COUNTY REGIONAL | : | |
| POLICE DEPARTMENT, CHIEF | : | |
| TIMOTHY DAMON, THE YORK | : | |
| COUNTY REGIONAL POLICE | : | |
| BOARD OF COMMISSIONERS, | : | |
| Defendants | : | |

## MEMORANDUM

Before the Court is Defendants York County Regional Police Department ("the

Department" or "YCRP"), Chief Timothy Damon ("Chief Damon"), and the York County

Regional Police Board of Commissioners ("the Board") (collectively, "Defendants")' motion to

dismiss Plaintiff Daniel Miller ("Plaintiff")'s complaint.  (Doc. No. 18.)  For the reasons that

follow, the Court will grant the motion.

## I.     BACKGROUND[1]

Plaintiff is an adult individual residing in York County, Pennsylvania.  (Doc. No. 1 ¶ 4.)

---

[1] The factual background is drawn from Plaintiff's complaint (Doc. No. 1), the allegations of which the Court accepts as true for purposes of the pending motion to dismiss.  See Kedra v. Schroeter, 876 F.3d 424, 434 (3d Cir. 2017).  Plaintiff also includes a "Statement of Facts" in his brief in opposition to Defendants' motion to dismiss.  (Doc. No. 23 at 2–5.)  "[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss."  Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc., 836 F.2d 173, 181 (3d Cir. 1988) (internal citations omitted).  Plaintiff's "Statement of Facts" includes several factual assertions that do not appear in Plaintiff's complaint and multiple purported quotes without any actual citation to Plaintiff's complaint.  As Defendants put it: "[p]aragraphs 6, 8, and 13 all contain citation-less quotes that appear nowhere in the materials within the scope of review."  (Doc. No. 24 at 3.)  The Court will not consider such factual assertions in its review of Defendants' motion.

He has been employed by the Department since approximately 1999.[2]  (Id.)  Prior to November 2021, he held the rank of Corporal.  (Id. ¶ 8.)  Chief Damon is Chief of Police for the Department.  (Id. ¶ 6.)  The Board is the "governing body responsible for oversight of [the Department] and has final policymaking authority for the department."  (Id. ¶ 7.)

Plaintiff alleges that, on November 14, 2021, he was directed to oversee an investigation involving a woman named Marisa Vicosa and her minor children.  (Id. ¶ 9.)  During this investigation, Ms. Vicosa obtained an emergency protective order for herself and her children.  (Id. ¶ 10.)  According to Plaintiff, Chief Damon "ordered Plaintiff not to attempt service" of the protective order.  (Id. ¶ 11.)  Plaintiff alleges that he "recogniz[ed] the illegality of" Chief Damon's order not to attempt service, and "attempted to contact Chief Damon multiple times to clarify the order but received no response."  (Id. ¶ 12.)  The next day, on November 15, 2021, "Plaintiff informed Ms. Vicosa that the protective order had not been served due to Chief Damon's order," and "advised her of her right to file a complaint against Chief Damon."  (Id. ¶ 13.)  On November 22, 2021, "the York County District Attorney announced that Ms. Vicosa had filed a private criminal complaint against Chief Damon, which would be investigated by the Pennsylvania Attorney General's Office."  (Id. ¶ 14.)  The following day, Plaintiff was placed on administrative leave pending an investigation, allegedly based on complaints by Chief Damon regarding "[a]lleged disparaging statements made on or off duty," "[a]llegedly disclosing Chief Damon's home address to Ms. Vicosa," and "[e]xplaining to Ms. Vicosa how to file a complaint against Chief Damon."  (Id. ¶ 15.)  On December 6, 2021, during an interview with the

---

[2]  In their brief in support of their motion to dismiss, Defendants state that the Department was formerly known as the "York Area Regional Police," but its "service territory . . . expanded, resulting in a reorganization and the creation of York County Regional Police," which is the "successor."  (Doc. No. 18 at 1.)  For purposes of this memorandum, the Court will refer to both entities as "the Department" or "YCRP."

Pennsylvania Attorney General's Office, Plaintiff denied providing Chief Damon's address to Ms. Vicosa, which Ms. Vicosa allegedly later confirmed in her own interview.  (Id. ¶¶ 17–18.)

Plaintiff alleges a "pattern of retaliation through numerous adverse employment actions," including: demotion from his corporal position in February 2022; removal from specialized duties, including "SWAT, Firearms Instructor, Active Shooter Instructor, and Honor Guard" in April 2022; denial of his ability to serve as an Officer in Charge in April 2022; denial of all overtime opportunities—64 documented denials between May 2023 and May 2024; exclusion from mandatory training and staff meetings; restriction of "law enforcement authority without cause"; refusal to honor the terms of two settlement agreements; "[e]nhanced scrutiny and different standards than peers"; and the denial of secondary employment opportunities permitted to other officers.  (Id. ¶ 19.)  Plaintiff alleges that "[m]ultiple supervisors have explicitly acknowledged the retaliatory treatment."  (Id. ¶ 21.)

On November 15, 2024, Plaintiff filed a complaint (Doc. No. 1) against Defendants alleging four claims: (1) First Amendment retaliation against all Defendants under 42 U.S.C. § 1983; (2) violation of the Pennsylvania Whistleblower Law, 43 P.S. § 1421, against all Defendants for retaliation against Plaintiff in response to his "good faith reports of wrongdoing"; (3) breach of contract against the Department and the Board for violation of "two valid and binding settlement agreements"; and (4) civil conspiracy against all Defendants for "act[ing] in concert to retaliate against Plaintiff for his protected activities."  (Doc. No. 1 ¶¶ 26–46.)  Plaintiff initially filed the complaint in the United States District Court for the District of Columbia.  (Doc. No. 1.)  On February 27, 2025, Plaintiff filed a motion to transfer the case to the Eastern District of Pennsylvania, asserting that:

> [a]lthough Plaintiff initially selected the District of Columbia as the forum for this action, upon further consideration, Plaintiff believes that transfer to the Eastern

District of Pennsylvania would better serve the convenience of all parties and potential witnesses.

(Doc. No. 7 at 3.)  On April 21, 2025, the case was transferred to the Eastern District of Pennsylvania.  (Doc. No. 9.)  Then, on April 30, 2025, Plaintiff filed another motion to transfer, this time to the Middle District of Pennsylvania, describing a "clerical error" in its initial transfer motion to the Eastern District.  (Doc. No. 11 at 1.)  That same day, the case was transferred to the Middle District.  (Doc. Nos. 12, 13.)

On August 22, 2025, Defendants filed a motion to dismiss under Federal Rule of Procedure 12(b)(6).  (Doc. No. 18.)  On September 5, 2025, Defendants filed their brief in support (Doc. No. 20), as well as three exhibits: Ms. Vicosa's private criminal complaint (Doc. No. 20-1); and the two settlement agreements between Plaintiff and the Department (Doc. Nos. 20-2, 20-3).  The motion is fully briefed (Doc. Nos. 23, 24) and ripe for disposition.

## II.    LEGAL STANDARD

Federal notice and pleading rules require the complaint to provide the defendant notice of the claim and the grounds upon which it rests.  See Phillips v. County of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008).  The plaintiff must present facts that, accepted as true, demonstrate a plausible right to relief.  See Fed. R. Civ. P. 8(a).  Although Federal Rule of Civil Procedure 8(a)(2) requires "only a short and plain statement of the claim showing that the pleader is entitled to relief," a complaint may nevertheless be dismissed under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted."  See Fed. R. Civ. P. 12(b)(6).

When ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept as true all factual allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff.  See In re Ins. Brokerage Antitrust Litig., 618

F.3d 300, 312 (3d Cir. 2010).  The Court's inquiry is guided by the standards of Bell Atlantic

Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 556 U.S. 662 (2009).  Under

Twombly and Iqbal, pleading requirements have shifted to a "more heightened form of

pleading."  See Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).  To prevent

dismissal, all civil complaints must set out "sufficient factual matter" to show that the claim is

facially plausible.  See id.  The plausibility standard requires more than a mere possibility that

the defendant is liable for the alleged misconduct.  As the Supreme Court instructed in Iqbal,

"where the well-pleaded facts do not permit the court to infer more than the mere possibility of

misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to

relief.'"  See Iqbal, 556 U.S. at 679 (alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)).

Accordingly, to determine the sufficiency of a complaint under Twombly and Iqbal, the

United States Court of Appeals for the Third Circuit ("Third Circuit") has identified the

following steps a district court must take under Rule 12(b)(6): (1) identify the elements a

plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the

complaint "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded

factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief."

See Santiago v. Warminster Township, 629 F.3d 121, 130 (3d Cir. 2010) (quoting Iqbal, 556

U.S. at 679).

In ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a court must

consider only the complaint, exhibits attached to the complaint, matters of public record, as well

as undisputedly authentic documents if the complainant's claims are based upon these

documents."  See Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit

Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

## III.   DISCUSSION

Defendants seek dismissal of each of Plaintiff's claims.  The Court begins with a

discussion of Plaintiff's First Amendment retaliation claim before turning to Plaintiff's state law

claims.

### A.      Plaintiff's First Amendment Retaliation Claim

"To state a First Amendment retaliation claim, a public employee plaintiff must allege

that his activity is protected by the First Amendment, and that the protected activity was a

substantial factor in the alleged retaliatory action."  Gorum v. Sessoms, 561 F.3d 179, 184 (3d

Cir. 2009).[3]  The first element is a question of law, and the second is a question of fact.  See id.

Then, "[i]f these two elements are satisfied, the burden shifts to the defendants to demonstrate

that the same action would occur if the speech had not occurred."  See id.  As to the first

element:

> A public employee's statement is protected activity when (1) in making it, the
> employee spoke as a citizen, (2) the statement involved a matter of public concern,
> and (3) the government employer did not have "an adequate justification for
> treating the employee differently from any other member of the general public" as
> a result of the statement he made.

See Hill v. Borough of Kutztown, 455 F.3d 225, 241–42 (3d Cir. 2006) (quoting Garcetti v.

Ceballos, 547 U.S. 410, 418 (2006)).  The United States Supreme Court, in Garcetti, held that

---

[3]  Both parties cite to Thomas v. Independence Township, 463 F.3d 285 (3d Cir. 2006), which
articulates the different test that courts apply when assessing First Amendment retaliation claims
by private citizens, not public employees.  See Falco v. Zimmer, 767 F. App'x 288, 298 (3d Cir.
2019) (unpublished) (surveying the case law and explaining that "[a] review of our jurisprudence
on such claims reveals that the District Court was correct in the first instance and incorrect in the
second instance: Falco's, not Appellees', version of the elements is applicable here because
Falco was a public employee when he experienced the alleged First Amendment retaliation").
Because Plaintiff is a public employee, Gorum provides the applicable test.

"when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." See Garcetti, 547 U.S. at 421. "The critical question under Garcetti is whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties." Lane v. Franks, 573 U.S. 228, 240 (2014). Further, "the scope and content of a plaintiff's job responsibilities is a question of fact, but the ultimate constitutional significance of those facts is a question of law." See Flora v. County of Luzerne, 776 F.3d 169, 175 (3d Cir. 2015).

"Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." Connick v. Myers, 461 U.S. 138, 147–48 (1983). "The content of speech on a matter of public concern generally addresses a social or political concern of the community," for instance speech that "relate[s] to broad social or policy issues," speech "implicat[ing] the discharge of public responsibilities by an important government office," or that which "relate[s] primarily to the way in which a government office [i]s serving the public." See Borden v. Sch. Dist. of Twp. of E. Brunswick, 523 F.3d 153, 169–70 (3d Cir. 2008) (citing cases) (internal citations omitted).

Plaintiff asserts in his complaint that he engaged in constitutionally protected speech when he: (1) "[r]eported Chief Damon's illegal order regarding the protective order service"; (2) "[t]estified truthfully to the Attorney General's Office"; and (3) "[a]ssisted Ms. Vicosa in exercising her constitutional right to petition the government." (Doc. No. 1 ¶ 28.)

Defendants argue that "Plaintiff has not alleged any actionable speech qualifying for First Amendment protection." (Doc. No. 20 at 15.) Defendants state that:

> Plaintiff's reporting of Chief Damon's "illegal" order does not qualify as protected speech. Plaintiff alleges that he was a corporal in charge of an investigation. His

job duties include obedience to all lawful orders received from superior officers (such as the Chief of Police) and reporting orders he believed to be unlawful.

(Doc. No. 20 at 15.)  For support, Defendants cite to Lahovski v. Rush Township, 441 F. Supp. 3d 43 (M.D. Pa. 2020), in which a district court dismissed a First Amendment retaliation claim brought by former police officers, finding that "[i]t is within the scope of a police officer's duties, i.e., what he 'was employed to do', and within the course of his ordinary job responsibilities to report alleged illegal activity to the County prosecutor."  See Lahovski, 441 F. Supp. 3d at 55.  The district court in Lahovski also found that a complaint by one officer about another officer's use of his taser "does not constitute protected speech since he spoke out against using [police] equipment . . .  and this conduct is within the scope of his ordinary job duties." See id. at 57.  Defendants assert that, accordingly, "no matter how characterized, Plaintiff's reporting of the alleged 'illegal' order is not entitled to First Amendment protection."  (Doc. No. 20 at 15.)

In response, Plaintiff argues that he spoke as a citizen and that his "speech transcends ordinary job duties in several critical ways."  (Doc. No. 23 at 6.)  First, he asserts that "[w]hen ordered to violate Pennsylvania statutes governing emergency [protective order] service, Miller faced an irreconcilable conflict between his oath of office and an illegal command."  (Id.) Therefore, "[h]is speech challenging this order was not routine duty performance but citizen-level resistance to governmental lawlessness."  (Id.)  Second, he argues that "the Garcetti analysis must account for the duty to intervene policies and police accreditation standards," whereby "[m]odern policing explicitly requires officers to speak up when witnessing misconduct."  (Id.)  Third, he states that his case "involves challenging a direct order from his superior to commit what he reasonably believed was a statutory violation," which Plaintiff asserts "transforms the speech from routine job function to constitutionally protected dissent."

8

(Id.)  Plaintiff cites no authority in support of these arguments.

Upon careful consideration of the allegations of Plaintiff's complaint, the parties' briefs, and the applicable law, the Court finds that Plaintiff fails to plausibly allege that he was speaking as a citizen.  A complainant must set out "sufficient factual matter" to show that a claim is facially plausible.  See Fowler, 578 F.3d at 210.  Plaintiff's complaint is extremely sparse.  Even accepting as true all factual allegations in the complaint and all reasonable inferences that can be drawn from them, and viewed in the light most favorable to Plaintiff, he has not pleaded sufficient factual matter to show that his First Amendment retaliation claim is facially plausible.

Plaintiff alleges that, on November 14, 2021, he was directed to oversee an investigation in which Ms. Vicosa obtained an emergency protective order for herself and her children.  (Doc. No. 1 ¶¶ 9–10.)  According to Plaintiff, Chief Damon "ordered Plaintiff not to attempt service" of the protective order.  (Id. ¶ 11.)  Plaintiff alleges that he "recogniz[ed] the illegality of" Chief Damon's order not to attempt service, and "attempted to contact Chief Damon multiple times to clarify the order but received no response."  (Id. ¶ 12.)  The next day, on November 15, 2021, "Plaintiff informed Ms. Vicosa that the protective order had not been served due to Chief Damon's order," and "advised her of her right to file a complaint against Chief Damon."  (Id. ¶ 13.)  On November 22, 2021, "the York County District Attorney announced that Ms. Vicosa had filed a private criminal complaint against Chief Damon, which would be investigated by the Pennsylvania Attorney General's Office."  (Id. ¶ 14.)  Later, during an interview with the Pennsylvania Attorney General's Office, Plaintiff denied providing Chief Damon's address to Ms. Vicosa, which Ms. Vicosa allegedly later confirmed in her own interview.  (Id. ¶¶ 17–18.)  Plaintiff sums this up by asserting that he "engaged in constitutionally protected speech when he" "[r]eported Chief Damon's illegal order," "[t]estified truthfully to the Attorney General's

Office," and "[a]ssisted Ms. Vicosa in exercising her constitutional right to petition the government." (Id. ¶ 28.)

Plaintiff belatedly attempts, in his brief in opposition to Defendants' motion to dismiss and its "Statement of Facts," to bolster this factual predicate with new asserted facts and quotes that do not appear anywhere in Plaintiff's complaint. See (Doc. No. 23). For instance, Plaintiff states in his brief that his "job description explicitly required him to 'obey and enforce all ordinances of the townships and boroughs; all criminal laws of the Commonwealth of Pennsylvania,'" (id. at 6), and that his job description "explicitly required him to 'perform the duties of a police officer' and 'respond to calls for police service'" (id. at 5). Plaintiff does not attribute these quotes to anything, and their provenance is unclear. As described supra in footnote 1, "the complaint may not be amended by the briefs in opposition to a motion to dismiss." See PepsiCo, Inc., 836 F.2d at 181.

The Third Circuit has "forgone any attempt to create a comprehensive framework for determining whether speech is made pursuant to an employee's official job duties," but the case law contains certain contours, which guide the Court here. See Flora, 776 F.3d at 177. In Flora, the Third Circuit reversed the district court's dismissal of a complaint where:

> there was a factual dispute as to whether Flora's job duties encompassed making the statements at issue. Rather than accepting the facts alleged in the complaint as true, the District Court in effect made factual determinations as to the scope of Flora's duties. In doing so, it erred.

See id. at 175–76. The plaintiff in Flora, a public defender, was concerned that the public defender's office was under-resourced. See id. When "channeling his speech up the chain of command failed to produce results, he took drastic measures" by filing a lawsuit challenging the office's funding level, and also by bringing public attention to an issue involving thousands of pending expungements. See id. at 180 (internal citations omitted). The Third Circuit found that

10

his "speech with respect to both the funding litigation and the expungement problems was not part of his ordinary responsibilities—it was not part of the work he was paid to perform on an ordinary basis." See id.  The plaintiff in Flora articulated in his complaint a number of "his duties" at the public defender's office, including "overseeing its lawyers and employees, establishing its policies, managing its budget, and ensuring its compliance with constitutional, statutory, and professional/ethical guidelines." See id. at 176 n.10.  He also outlined certain statutory obligations, as well as typical processes for accomplishing tasks within his office. See id.  "Factors relevant to the analysis include the employee's duties, the impetus for his or her speech, the setting and subject matter of that speech, and the identities of the individuals to whom that speech is addressed." Lahovski, 441 F. Supp. 3d at 53.

By contrast, Plaintiff does not articulate the scope of his duties or detail his activities that purportedly fell outside of these bounds.  Plaintiff asserts in a conclusory fashion that he "engaged in constitutionally protected speech when he" "[r]eported Chief Damon's illegal order," "[t]estified truthfully to the Attorney General's Office," and "[a]ssisted Ms. Vicosa in exercising her constitutional right to petition the government."  (Doc. No. 1 ¶ 28.)  Plaintiff does not describe to whom he reported the order, or in what context.  He does not describe the nature or scope of the proceeding before the Attorney General's Office, including whether he appeared in his official capacity as a law enforcement officer, and he does not detail his assistance to Ms. Vicosa.  The Court cannot conclude that Plaintiff's sparse allegations plausibly allege a First Amendment retaliation claim as pleaded.  See Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997) (stating that "a court need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss") (internal quotations omitted).

In accordance with the foregoing, the Court finds that Plaintiff's complaint does not

11

"plausibly give rise to an entitlement to relief" as to the citizen speech element of a First Amendment retaliation claim.  See Santiago, 629 F.3d at 130.  Accordingly, the Court will dismiss the claim, but will permit Plaintiff leave to amend the claim, because there is no indication that such amendment would be futile or inequitable.  See Phillips, 515 F.3d at 236 (stating that "if a complaint is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile").  Should Plaintiff choose to amend his complaint, then as in Flora, "[w]hether [Plaintiff's] ordinary job duties actually encompassed such tasks is an issue that may need to be resolved later in the case."  See Flora, 776 F.3d at 181.

Even assuming arguendo that Plaintiff's complaint plausibly alleged the citizen speech element of a First Amendment retaliation claim, the Court would dismiss the claim for failure to plausibly allege that Plaintiff spoke on a matter of public concern.  Plaintiff asserts that his "speech addressed matters of public concern, specifically:" "[t]he proper enforcement of protective orders"; "[p]ublic safety"; and "[o]fficial misconduct."  (Doc. No. 1 ¶ 29.)  Defendants argue that, with respect to Plaintiff's testimony to the Pennsylvania Attorney General's Office, "Plaintiff does not allege the contents of the alleged communications," and therefore "has failed to set forth sufficient allegations to demonstrate that this communication concerns matters of public concern."  (Doc. No. 20 at 16.)  As to Plaintiff's assistance to Ms. Vicosa, Defendants argue that:

> a private criminal complaint is, by definition, an individual's complaint which is being submitted for review by the district attorney. Such complaints are generally personal in nature insofar as they request governmental intervention into a specific situation. Marisa's specific complaint takes issue with the failure to serve a protection from abuse order by 3 AM the day after it was acquired. A topic is considered to be of public concern if it "involves a matter of political, social, or other concern to the community." Falco v. Zimmer, 767 F. App'x 288, 304 (3d Cir. 2019). Marisa's Complaint does not meet this criteria and thus does not address a

12

matter of public concern. By extension Miller's speech concerning this private criminal complaint does not involve a matter of public concern, and therefore, is not actionable.

(Id. at 17–18.)

Although Plaintiff summarily lists three bases that he argues demonstrate that he spoke on matters of public concern—"[t]he proper enforcement of protective orders," "[p]ublic safety," and "[o]fficial misconduct" (Doc. No. 1 ¶ 29)—his complaint does not expand on the actual form and content of his expression. As previously stated, he does not detail the nature or scope of the proceeding before the Pennsylvania Attorney General's Office or the content of his testimony.[4] Nor does he describe his private advice to Ms. Vicosa such that it could be construed as a public matter. A complainant must set out "sufficient factual matter" to show that a claim is facially plausible. See Fowler, 578 F.3d at 210. It is true that speech may be characterized "as relating to a matter of social or political concern of the community if, for example, the speaker seeks to 'bring to light actual or potential wrongdoing or breach of public trust' on the part of government officials." See Holder v. City of Allentown, 987 F.2d 188, 195 (3d Cir. 1993) (citing Connick, 461 U.S. at 146). But, setting aside conclusory statements regarding the supposed illegality of Chief Damon's order to Plaintiff not to serve the protective order, Plaintiff does not plausibly allege that Chief Damon, or any of the other Defendants, ordered that the protective order not be served at all. It is not evident—and Plaintiff does not assert—that only he could have lawfully served the order, rather than another law enforcement officer. Even if that were the case, Plaintiff does not point to legal authority that affirmatively requires service of such protective

---

[4] The only factual assertion Plaintiff makes regarding his testimony is that, "[d]uring his interview with the Attorney General's Office on December 6, 2021, Plaintiff truthfully denied providing Chief Damon's address to Ms. Vicosa and maintained that the order not to serve the protective order was illegal." (Doc. No. 1 ¶ 18.)

orders within a timeframe that Defendants exceeded.[5]

Further, the Supreme Court has cautioned that "[t]o presume that all matters which transpire within a government office are of public concern would mean that virtually every remark—and certainly every criticism directed at a public official—would plant the seed of a constitutional case." See Connick, 461 U.S. at 149; see also Borden, 523 F.3d at 171 (finding an employee's acts to be non-public where they did "not occur in any type of official proceeding, and even more importantly, [] d[id] not extend into any type of public forum"); Gorum, 561 F.3d at 187 (finding that plaintiff's activity "did not involve a matter of public concern. Instead, his 'speech' during Morris's disciplinary hearing related to the personal grievance of one student. There is no evidence in the record that Gorum even made a public statement."). Plaintiff must do more than state in a conclusory manner that his speech is of public concern. Whether speech

---

[5] Plaintiff asserts in his brief that he was "ordered to violate Pennsylvania statutes governing emergency [protective order] service." (Doc. No. 23 at 6.) In the complaint, he describes the order "not to attempt service" as a "direct violation of 23 Pa. C.S. § 6106(f), which requires police officers to make reasonable attempts to serve such orders." (Doc. No. 1 ¶ 11.) However, after Defendants assert in their brief that § 6106(f) does not require "that a PFA must be served immediately, or by 3 AM the day following its acquisition" (Doc. No. 20 at 20), Plaintiff appears to agree, arguing instead in his brief in opposition, for the first time, that Defendants violated a different law—246 Pa. Code Rule 1209—and that "[§ 6106(f)], cited by Defendants, applies to different circumstances and does not override the emergency execution requirements." (Doc. No. 23 at 9.) The newly-cited law is Rule 1209, which pertains to the "Service and Execution of Emergency Protection Orders" within Title 246 of the Pennsylvania Administrative Code—the title containing the Minor Court Civil Rules. See 246 Pa. Code Rule 1209. The Court does not read Rule 1209 to set forth affirmative time limits for service by law enforcement such that a court could plausibly find the rule to have been violated here. The rules of Chapter 1200, including Rule 1209, "apply to the exercise by a hearing officer of jurisdiction," see 246 Pa. Code Rule 1201, and "hearing officer" is defined in 246 Pa. Code Rule 1202 to mean magisterial district judges and other judicial officials. The hearing officer is to "immediately deliver a service copy of the protection order . . . to a police officer, police department, sheriff, or certified constable for service upon the defendant and execution," and, after "making reasonable effort, if the executing officer is unable to serve the protection order upon the defendant in a timely fashion, the executing officer shall leave a service copy of the petition containing the order with the police department with jurisdiction over the area in which the plaintiff resides for service upon the defendant." See 246 Pa. Code Rule 1209.

"addresses a matter of public concern must be determined by the content, form, and context of a given statement," and there is very little content or context alleged here for the Court to assess. See Connick, 461 U.S. at 147–48.

As previously stated, the Court will dismiss Plaintiff's First Amendment retaliation claim, but will permit Plaintiff leave to amend the claim, because there is no indication that such amendment would be futile or inequitable. See Phillips, 515 F.3d at 236 (stating that "if a complaint is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile").

### B.      Plaintiff's State Law Claims

The remaining counts in Plaintiff's complaint consist of state law claims. Because the Court finds that Plaintiff has failed to adequately plead his First Amendment retaliation claim, there is currently no viable federal claim before the Court to support the exercise of supplemental jurisdiction over Plaintiff's state law claims. See 28 U.S.C. § 1367(c)(3); see also Hedges v. Musco, 204 F.3d 109, 123 (3d Cir. 2000) (internal citations omitted) (stating that "[t]his Court has recognized that, 'where the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so'"). Accordingly, finding no affirmative justification for exercising supplemental jurisdiction here, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims, and will dismiss the remaining counts without prejudice to Plaintiff's ability to reassert the claims in an amended complaint in this Court, or in

state court if no amended complaint is filed in this Court.[6]

## IV.    CONCLUSION

For the foregoing reasons, the Court will grant Defendants' motion, dismiss Plaintiff's claims without prejudice, and grant Plaintiff leave to file an amended complaint.  An appropriate Order follows.

s/ Yvette Kane
Yvette Kane, District Judge
United States District Court
Middle District of Pennsylvania

---

[6] Defendants attached three exhibits to their brief in support of their motion to dismiss (Doc. No. 20): Ms. Vicosa's private criminal complaint (Doc. No. 20-1); and the two settlement agreements between Plaintiff and the Department (Doc. Nos. 20-2, 20-3).  There is no dispute as to the authenticity of these documents and the Court may consider "undisputedly authentic documents if the complainant's claims are based upon these documents" in ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim.  See Mayer, 605 F.3d at 230 (citing Pension Benefit Guar. Corp., 998 F.2d at 1196).  Plaintiff's state law breach of contract claim appears to be based upon the settlement agreements, but because the Court declines to exercises supplemental jurisdiction over Plaintiff's state law claims, it need not consider the exhibits for purposes of the present memorandum.